Citation Nr: 1518727 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 12-34 882 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota


THE ISSUES

1. Entitlement to a rating in excess of 20 percent for degenerative disc disease of the lumbar spine with surgical scar.

2. Entitlement to an initial rating in excess of 10 percent for right lower extremity radiculopathy.


REPRESENTATION

Veteran is represented by: Antonio Tejeda, Attorney


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

C. Banister, Associate Counsel 


INTRODUCTION

The Veteran served on active duty from July 1972 to July 1975. These matters come before the Board of Veterans' Appeals (Board) on appeal from an August 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Paul, Minnesota.

The Veteran testified at an August 2014 hearing before the undersigned Veterans Law Judge. A transcript of that hearing is associated with the claims file.

In a January 2015 remand, the Board found that the evidence of record raised the issue of entitlement to a rating in excess of 10 percent for left lower extremity radiculopathy. To date, the record does not show that the RO has undertaken any development or adjudication of this claim. As such, the Board is again referring it to the RO for appropriate action. 


FINDINGS OF FACT

1. For the period prior to May 13, 2011, the Veteran's service-connected degenerative disc disease of the lumbar spine was manifested by pain, tenderness, stiffness, and forward flexion limited to less than 30 degrees.

2. For the period beginning May 13, 2011, the Veteran's service-connected degenerative disc disease of the lumbar spine was manifested by pain, tenderness, stiffness, and forward flexion greater than 30 degrees.


3. Throughout the appeal period, the Veteran's service-connected scar was manifested by one well-healed, linear, surgical scar measuring approximately 19.5 centimeters, which was neither painful nor unstable and caused no functional limitations.

4. Throughout the appeal period, the Veteran's right lower extremity radiculopathy was manifested by right lower extremity pain radiating through the hip, buttock, thigh, and knee with occasional stiffness, weakness, numbness, and dysesthesia, all of which was not relieved by surgery and only temporarily alleviated by epidural steroid injections. 


CONCLUSIONS OF LAW

1. Prior to May 13, 2011, the criteria for a rating of 40 percent for degenerative disc disease of the lumbar spine have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5003-5237 (2014).

2. Beginning Mary 13, 2011, the criteria for a rating in excess of 20 percent for degenerative disc disease of the lumbar spine have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 50035237 (2014).

3. The criteria for a compensable initial rating for a surgical scar have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.118 Diagnostic Code 7804 (2014).

4. The criteria for an initial rating of 20 percent for right lower extremity radiculopathy have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.124a, Diagnostic Code 8520 (2014).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has a duty to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014). 

Proper notice from VA must inform the veteran of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the veteran is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). This notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004). 

With regard to the Veteran's claim for an increased rating for degenerative disc disease of the lumbar spine with surgical scar, the RO's June 2010 letter contained the requisite notice. See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Quartuccio, 16 Vet. App. at 187; Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); Vazquez-Flores v. Shinseki, 580 F.3d 1270, 1275-82 (2009). With regard to the Veteran's claim for an initial rating in excess of 10 percent for right lower extremity radiculopathy, service connection was granted in an August 2010 rating decision, and therefore, that claim is now substantiated. The Veteran's filing of a notice of disagreement does not trigger additional notice obligations under 38 U.S.C.A. § 5103(a). 38 C.F.R. § 3.159(b)(3). Rather, the Veteran's appeal as to the initial rating assigned triggers VA's statutory duties under 38 U.S.C.A. §§ 5104 and 7105 and regulatory duties under 38 C.F.R. § 3.103. The August 2012 statement of the case set forth the relevant diagnostic codes for rating the disability at issue and included a description of the rating criteria for the current evaluation and for all higher evaluations. The Veteran was, thus, informed of what was needed not only to achieve the next higher schedular rating, but also to obtain all schedular ratings above that already assigned. Therefore, the Veteran has been informed of what is necessary to achieve a higher rating for his service-connected right lower extremity radiculopathy. See Bernard v. Brown, 4 Vet. App. 384 (1993).

The duty to assist the Veteran has also been satisfied. The RO obtained all VA treatment records identified by the Veteran. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. In January 2015, the Board remanded the above-captioned claims and directed the RO to obtain all of the Veteran's outstanding VA treatment records relevant to the issues on appeal, including records from the Minneapolis VA Health Care System dated February 2013 through the present. While in remand status, the RO obtained the VA treatment records identified by the Board and, therefore, substantially complied with the January 2015 remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998). Furthermore, there is no indication in the record that additional evidence relevant to the issue being decided herein is available and not part of the record. See Pelegrini, 18 Vet. App. at 116. 

The Veteran was provided VA examinations in June 2010, August 2010, May 2011, June 2012, and July 2014. The examiners administered thorough clinical evaluations which provided findings pertinent to the rating criteria and allowed for fully informed evaluations of the disabilities at issue. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this claim, the Board finds that any such failure is harmless. See Mayfield, 20 Vet. App. at 542-43; See also Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency and clarifying that the burden of showing that an error is harmful or prejudicial normally falls upon the party attacking the agency's determination); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974)("[N]o error can be predicated on insufficiency of notice since its purpose had been served."). 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2014). The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2014). Additionally, staged ratings are appropriate when the factual findings show distinct time periods during which a disability exhibits symptoms that warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119, 127 (1999).

A June 2009 VA physical therapy note indicates that the Veteran reported acute lower back pain with an onset date of approximately three months earlier. He also reported constant lower extremity pain radiating along the posterior thigh and into the feet, bilaterally, which he characterized as a four or five out of ten in severity. The Veteran stated that his pain was worse in the morning and after sitting or standing for more than five minutes. The Veteran reported sleeping on his side and having significant difficulty falling asleep. Imaging studies revealed a L4-L5 disc extrusion with annular tear. A physical examination revealed mild tenderness to palpation along the lumbar paraspinals. Lower extremity strength was normal. Patellar reflex was hypoactive on the right side, but reflexes were otherwise normal throughout both lower extremities. A straight leg raising test was positive. Sensation was intact to light touch throughout both lower extremities. Range of motion testing revealed flexion to 15 degrees, with increased radicular pain; extension to ten degrees, with increased radicular pain; lateral flexion to 30 degrees, bilaterally, with pain upon right side bending; and rotation to 20 degrees, bilaterally, without any complaints of pain. 

A June 2009 VA treatment record indicates that the Veteran reported worsening pain and increasing paresthesias in his right foot. He denied any weakness or bladder or bowel incontinence. Magnetic resonance imaging (MRI) showed a severely extruded disc at L4-L5, which occupied most of the space in the spinal cord. The treatment provider prescribed Gabapentin and referred the Veteran to neurosurgery.

A June 2009 neurosurgery clinic note indicates that the Veteran reported a constant dull, aching pain, which was aggravated by walking and sitting. The treatment provider noted that the Veteran moved about readily, seemed comfortable, and was neurologically normal. A lumbar MRI revealed a large L4-L5 centrally herniated disc with a minimally bulging L3-L4 disc. The diagnosis was a herniated nucleus pulposus at L4-L5 with resolving back pain and radiculopathy. He was fitted for a lumbar sacral orthoses flexible garment for support of the lower spine. It was noted that the Veteran took Gabapentin daily and saw considerable improvement in his symptoms with conservative treatment. The plan was to continue conservative treatment and follow up in one month.

A July 2009 VA physical therapy note indicates that the Veteran reported improved back and radicular pain, which he characterized as a four out of ten in severity. The Veteran indicated that he started walking for daily exercise. He reported one episode of radicular pain the past week, which occurred after walking too much. He indicated that he wore a brace if he sat for long periods of time. It was noted that the Veteran performed his home exercise program twice daily and additionally after prolonged sitting. Trunk active range of motion was within full limits throughout, and there was no increase in pain. Lower extremity strength was normal, bilaterally. The treatment provider noted that the Veteran demonstrated improved trunk active range of motion since his initial evaluation and improved core stability. The treatment provider indicated that the Veteran was independent with his extension home exercise program, and there were no further deficits requiring skilled physical therapy intervention. The treatment provider recommended increasing the frequency of the home exercises if radicular symptoms returned.

Later in July 2009, the Veteran reported increased hip pain after walking too briskly a few days earlier. However, he reported no pain after walking at a more moderate pace the day before. The Veteran stated that he planned to walk every evening. 

A July 2009 VA neurology outpatient note indicates that the Veteran reported worsening pain in the right leg and top of the foot. However, he reported that wearing a lumbosacral corset helped his pain and sitting tolerance, which increased to over ten minutes. The Veteran also reported very intense pain in the morning, which subsided with gentle movement. He expressed a desire to have back surgery because he was unable to do anything physical without experiencing pain in his back and legs. A physical examination revealed normal leg strength and decreased sensation over the top of the right foot. Imaging studies revealed a L4-L5 disc extrusion with annular tear. The treatment provider scheduled the Veteran for a L4-L5 laminectomy/microdiscectomy. 

In September 2009, the Veteran underwent a right L4-L5 hemilaminectomy and a right-sided L4-L5 foraminotomy to treat the herniated disc at L4-L5 with some impingement on the L4 nerve root. During the pre-operative consultation, the Veteran characterized his lower back pain as a six out of ten in severity. 

A February 2010 VA treatment record shows that the Veteran complained of recurrent pain. A MRI of the lumbar spine revealed a right paracentral disc protrusion with surrounding granulation tissue at L4-L5. 

During a June 2010 VA examination, the Veteran reported constant sharp pain in his lower back radiating down the right leg with associated stiffness and weakness. He reported flare-ups on a weekly basis, lasting about one day in duration. He indicated that his flare-ups were preceded by prolonged walking, sitting, standing, or bending. He denied any incapacitating episodes. The Veteran reported being able to stand for approximately 15 minutes at a time and walk approximately three or four blocks at a time. He reported moderate difficulty performing household chores and mild difficulty dressing and exercising. It was noted that the Veteran walked with a cane and was prescribed Gabapentin for his radicular symptoms, which helped somewhat. He denied experiencing any urinary or bowel symptoms. A physical examination revealed tenderness with palpation of the right paralumbar muscles and the right sacroiliac joint; however, there was no tenderness to palpation around the thoracic and lumbar vertebrae. The Veteran's gait, posture, and head position were normal, and there was no evidence of spasms, guarding, atrophy, erythema, edema, kyphosis, list, or scoliosis. The examiner observed normal toe walking, bilaterally, normal heel walking, bilaterally, normal squatting, normal right great toe extension strength, and normal left great toe extension strength. A Babinski test was normal, and a straight leg raising test was negative. Patellar and Achilles reflexes were absent, bilaterally. Sensory testing revealed normal position sense, bilaterally, and decreased sensation to soft touch in the right lateral lower leg. Range of motion testing revealed forward flexion to 20 degrees, with increased pain; extension to 10 degrees, with increased pain; left lateral flexion to 20 degrees; right lateral flexion to 20 degrees; left lateral rotation to 30 degrees; and right lateral rotation to 30 degrees. The examiner noted that the Veteran did not give a good effort with range of motion testing because he did not want to experience a flare-up. The examiner indicated that there were no additional functional limitations of the spine during flare-ups or with repetitive use, other than the already significantly reduced range of motion. The examiner also observed a long, well-healed surgical scar on the lumbar region, which was nontender to palpation and without any visible scar tissue. 

During an August 2010 VA examination, the Veteran reported progressively worsening dysesthesia, numbness, and pain radiating down the right leg into the foot, which began following the September 2009 back surgery. Patellar reflexes were hypoactive, bilaterally, and the Achilles reflex was hypoactive on the left and absent on the right. A Babinski test was normal. A sensory examination of the right lower extremity revealed normal sensation to vibration, pain/pinprick, position sense, and light touch. A motor examination revealed active movement against full resistance. The Veteran's muscle tone was normal, and there was no evidence of atrophy, imbalance, tremor, or fasciculation. The Veteran's gait was antalgic. The examiner indicated that no joint function was affected by a nerve disorder. The examiner also noted the presence of neuritis and neuralgia, but indicated that there was no paralysis. The diagnosis was right leg radiculopathy with associated right leg claudication. The examination report indicates that the Veteran's right lower extremity radiculopathy moderately affected his ability to perform chores and prevented him from exercising or playing sports.

A November 2010 VA physical rehabilitation consultation note shows that the Veteran complained of lower back and extremity pain. The Veteran indicated that he experienced significant resolution of the leg numbness following surgery; however, he experienced three episodes of different types of pain during the weeks following surgery. The Veteran described his pain as radiating down the right buttock and anterior thigh with significant numbness and tingling in the right lateral calf. He characterized his pain as a five to eight out of ten in severity and noted that his pain was worse in the morning and after sitting for 30 minutes or walking or standing for ten to 15 minutes. He also reported significant pain while lying down. He reported that his recent treatment with a chiropractor and physical therapist did not provide significant relief. He also indicated that he used at-home transcutaneous electrical nerve stimulation (TENS) without any significant relief. The Veteran stated that taking Gabapentin daily took the edge off. It was noted that the Veteran did not use any assistive devices. A physical examination of the lumbar spine revealed a scar from the previous back surgery, without any obvious kyphoscoliotic deformity. There was mild to moderate tenderness involving the right lower lumbar paraspinous region and over the right sacral sulcus. A straight leg raising test, sitting root tension sign, and Lasegue's sign were negative, bilaterally. The sacroiliac provocation test, including a Patrick's test, was positive on the right and negative on the left. A motor examination revealed normal muscle strength in both lower extremities. A sensate examination was unremarkable for light touch. Patellar and Achilles reflexes were hypoactive, bilaterally. The assessment was chronic low back pain, status post L4-L5 diskectomy; new onset of right L4 radicular symptoms, with resolving L5 radicular symptoms; central paracentral L4-L5 disc herniation with post-surgical changes of scarring; question of bilateral L4-L5 and L5-S1 facet synovitis; and rule out sacroiliac joint dysfunction. The plan was to continue conservative treatment and consider surgical options and/or lumbar epidural steroid injections if the pain did not improve. 

A January 2011 VA treatment record indicates that the Veteran's back pain was at an acceptable level while taking Tramadol and Gabapentin. However, the Veteran still reported continuing pain and numbness. He stated that he planned to ride a bicycle more often, as it was less painful than walking. A physical examination revealed normal muscle strength in both lower extremities, diminished light touch in the L1 dermatome on the right, and absent patellar reflexes, bilaterally. 

During a May 2011 VA examination, the Veteran reported lower back pain, which he characterized as a seven or eight out of ten in severity without medication and a four or five out of ten in severity after taking Tramadol. He also reported occasional stiffness and muscle spasms in the lower back. The examiner indicated that the Veteran experienced flare-ups "occasionally," stiffness and back spasms "sometimes," and leg weakness and numbness "at times." The Veteran denied experiencing incapacitating episodes or urinary or bowel symptoms. The examiner indicated that the Veteran's lower back pain affected his daily activities in that he had to rest every 15 minutes. For example, the Veteran stated that he did not do yard work, was only able to wash dishes for 15 minutes at a time, and had to limit shopping trips to picking up just a few items and not standing in line too long. He stated that he made his own bed and did his own laundry, including carrying it down the stairs. He reported walking for exercise, but having to stop and rest approximately every ten to 15 minutes. He indicated that he used a cane occasionally and denied any falls in the past year. He reported being able to drive normally, but indicated that he could not sit for over an hour. A physical examination revealed normal posture and gait. The examiner observed a surgical scar in the lumbar spine region measuring 19.8 centimeters long and eight millimeters wide at the widest point. The color was normal, and there was no pain, inflammation, edema, keloid, adherence to underlying tissue, ulcerations, breakdown, loss of skin, elevation, depression, or underlying soft tissue loss. The examiner indicated that there was no functional limitation caused by the scar.
Range of motion testing revealed flexion to 70 degrees; extension to 20 degrees; left lateral flexion to 30 degrees; right lateral flexion to 30 degrees; left lateral rotation to 30 degrees; and right lateral rotation to 15 degrees. The examiner observed objective evidence of pain beginning at the limits of the above-referenced ranges of motion. The examiner indicated that there were no additional functional limitations during flare-ups or with repetitive use. With regard to radicular symptoms, the Veteran reported that after standing for 15 minutes, he experienced pain in the right hip radiating the right quadricep and calf, followed by numbness in the calf. He indicated that sitting for a few minutes relieved these symptoms. He denied any bowel or bladder symptoms. Strength testing revealed normal toe walking, heel walking, squatting, and great toe extension, bilaterally. Patellar reflex was absent on the right and normal on the left, and Achilles reflexes were hypoactive, bilaterally. Sensation in both lower extremities was normal. A straight leg raising test was negative, indicating no radicular pain below the knees, bilaterally. Lower extremity muscle strength was good. 

A June 2011 VA treatment record indicates that the Veteran had pinched nerves at L5, which affected his right leg. It was noted that surgery provided some improvement with respect to the Veteran's foot, but new symptoms of soreness and fatigue at the quadriceps and calf muscles arose, which the treatment provider attributed to scar tissues from the September 2009 back surgery. 

A January 2012 VA treatment record indicates that the Veteran reported dull, intermittent back pain radiating to his outer thighs and knees, bilaterally, which began two months earlier. He indicated that it started near the L3-L4 level and was brought on by prolonged standing and walking. He stated that it resolved after approximately five minutes of sitting down. He indicated that he resumed exercising, which did not make his pain any worse. A physical examination revealed tenderness to palpation of the left paraspinous muscles, but no particular spasms were noted. The treatment provider observed decreased flexion, bilaterally, but otherwise there was full active range of motion. A straight leg raising test was negative, bilaterally, and reflexes were absent, bilaterally. The Veteran reported tightness in the iliotibial band on the ipsilateral side, bilaterally. Lower extremity strength was normal, except strength was a four out of five in the right extensor hallucis. The assessment was low back pain, which was likely a combination of intermittent impingement of the L3 nerve root and muscle spasm. The Veteran's symptoms did not raise to the level of requiring surgery, but the treatment provider recommended maintaining the Veteran's current dosage of Gabapentin. The plan was to continue home exercises and stretches and use ice and/or heat as needed.

In May 2012, the Veteran reported more radicular symptoms, such as dysesthesias, primarily in the L4-L5 distribution. The assessment was chronic lower back pain and spinal stenosis.

A June 2012 MRI revealed severe left foraminal narrowing with flattening of the left L3 nerve root in the left neural foramen and severe right foraminal narrowing at L4-5 with flattening of the right L4 nerve root in the right neural foramen. 

During a June 2012 VA examination, the Veteran reported occasionally using a cane for walking and denied any incapacitating episodes within the past year. A physical examination revealed one linear scar measuring 19 centimeters, which was neither painful nor unstable and caused no functional limitations. X-rays confirmed the presence of arthritis. Range of motion testing revealed flexion to 45 degrees, with objective evidence of pain beginning at 30 degrees; extension to 20 degrees; right lateral flexion to 20 degrees, with objective evidence of pain beginning at 10 degrees; left lateral flexion to 25 degrees, with objective evidence of pain beginning at 20 degrees; right lateral rotation to 30 degrees; and left lateral rotation to 30 degrees. Upon repetitive use, the examiner noted less movement than normal, excess fatigability, pain on movement, and additional limitation in range of motion. After three repetitions, flexion was limited to 40 degrees; extension to 20 degrees; right lateral flexion to ten degrees; left lateral flexion to 20 degrees; and right and left lateral rotation to 30 degrees. With regard to the Veteran's radicular symptoms, muscle strength and reflexes were normal, bilaterally, and a straight leg raising test was negative, bilaterally. The examiner observed atrophy of the right thigh and calf. The examiner indicated that the Veteran experienced moderate intermittent lower extremity radicular pain, bilaterally; moderate left lower extremity paresthesia and/or dysesthesia; no right lower extremity paresthesia and/or dysesthesia; and no lower extremity numbness, bilaterally. The examiner also indicated that the Veteran had bilateral foraminal narrowing noted on an MRI, which was consistent with his radicular symptoms. The examiner characterized the Veteran's radiculopathy as "mild" in both lower extremities. With regard to functional impairment, the Veteran was able to lift up to 15 pounds on an occasional basis; stand up to 20 minutes at a time, for a total of up to three to four hours during an eight-hour day; walk up to 15 minutes at a time, for a total of up to four hours during an eight-hour day; and sit for 30 minutes at a time, for a total of up to six hours during an eight-hour day. 

In September 2012, the Veteran reported increasing weakness in his quadriceps, bilaterally, and increasing sensory problems in the L4-L5 distribution, bilaterally. The Veteran stated that his symptoms were worse in the morning, but improved after taking medication and walking around. He indicated that his symptoms were interfering with his exercise program. He denied any bladder or bowel incontinence. The treatment provider recommended an epidural steroid injection and possibly neurosurgery if the epidural did not improve the Veteran's symptoms.

In December 2012, the Veteran indicated that his pain dramatically improved after the epidural injections. He reported an 80 percent improvement in his right leg symptoms and 30 percent improvement in the left leg. Consequently, the Veteran was able to reduce his dosage of Gabapentin. The treatment provider advised the Veteran that steroid injections were not recommended more than two or three times a year.

In March 2013, the Veteran complained of back and left thigh pain. He received a lumbar epidural injection at the left L2 root.

In August 2013, the Veteran complained of worsening back pain and right-sided leg pain. It was noted that he received an L4-L5 epidural steroid injection in October 2012, to which he responded better on the right side than the left. The Veteran reported that his right leg pain increased and started to limit his ambulation. The treatment provider ordered another epidural injection at L4-L5.

During a July 2014 VA examination, the Veteran reported intermittent back pain with radicular leg pain and occasional numbness in both lower extremities. He reported increased back and lower extremity pain after prolonged standing, walking, or sitting, and indicated that he had to rest or change positions in order to alleviate his pain. He stated that it was too painful to sleep on his back, and therefore, he had to sleep on his side. It was noted that the Veteran took Tramadol, Gabapentin, and Etodolac for pain relief. The Veteran reported occasionally riding a bicycle and walking outdoors. He denied experiencing incapacitating episodes or flare-ups which impacted thoracolumbar spine function. It was noted that the Veteran occasionally walked with a cane. The examiner provided diagnoses of degenerative arthritis of the lumbar spine and intravertebral disc syndrome. Range of motion testing revealed forward flexion to 45 degrees; extension to 15 degrees; right lateral flexion to 20 degrees; left lateral flexion to 25 degrees; right lateral rotation to 30 degrees; and left lateral rotation to 30 degrees. The examiner observed objective evidence of pain beginning at the limits of the above-referenced ranges of motion. Upon repetitive use, the examiner noted less movement than normal and pain on movement, but there was no additional limitation in range of motion after three repetitions. A physical examination revealed no evidence of guarding, localized tenderness, pain to palpation, ankylosis, or muscle atrophy. Muscle strength in both lower extremities was normal. Reflexes were hypoactive, bilaterally. A sensory examination was normal, bilaterally. A straight leg raising test was negative. The Veteran denied bowel or bladder problems. It was noted that the Veteran had mild bilateral lower extremity pain, mild bilateral extremity numbness, and no paresthesia and/or dysesthesia in either leg. The Veteran's gait was normal, and there were no trophic changes attributable to peripheral neuropathy. The examiner indicated that the affected nerve was the femoral nerve, which caused mild incomplete paralysis, bilaterally. The examiner also observed a well-healed surgical scar in the lumbar region measuring 19.5 centimeters. 

In August 2014, the Veteran reported continuing lower back and leg pain on a daily basis. He stated that he was thinking about getting another epidural injection around October.

During an August 2014 hearing before the Board, the Veteran testified that upon prolonged standing, he experienced pain radiating down his hips, quadriceps, and calf muscles, followed by feelings of numbness and heaviness in his legs. The Veteran indicated that he had to stop and rest at least twice when walking to a store three block away, and he had to rest at least two or three times while washing dishes. He stated that his lower back pain affected his daily activities in that he could not do household chores very effectively and could not go to the gym and exercise the way he did before his back surgery. He stated that he was able to dress himself, but had to sit down to put on pants. He reported being able to drive, but indicated that he never drove very far and was only able to sit for approximately 15 to 30 minutes before having to adjust his position to alleviate the pain. He denied experiencing muscle spasms and contractions, but indicated that his muscles sometimes felt stiff and tight when he woke up in the morning. He also stated that his right foot dragged a bit when he wore dress shoes. 

In November 2014 VA, the Veteran received another epidural steroid injection in the lumbar spine for back and leg pain.




I. Degenerative Disc Disease of the Lumbar Spine

In a June 2008 rating decision, service connection was granted for degenerative disc disease of the lumbar spine, to which a 20 percent rating was assigned, effective April 2, 2007. See 38 C.F.R. § § 4.71a, Diagnostic Code 5003-5237. From September 28, 2009 to October 31, 2009, the Veteran's degenerative disc disease of the lumbar spine was assigned a temporary total disability rating based on surgical or other treatment necessitating convalescence. In an August 2010 rating decision, the RO denied the Veteran's claim of entitlement to a rating in excess of 20 percent for his service-connected degenerative disc disease of the lumbar spine with surgical scarring. Thereafter, the Veteran perfected an appeal.

The Veteran's service-connected degenerative disc disease of the lumbar spine has been assigned a 20 percent disability pursuant to the criteria set forth in 38 C.F.R. 
§ 4.71a, Diagnostic Code 5003-5237 of the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula). Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. 38 C.F.R. § 4.27 (2014). In this case, the hyphenated diagnostic code indicates that degenerative arthritis, under Diagnostic Code 5003, is the service-connected disability, and a lumbosacral strain, under Diagnostic Code 5237, is a residual condition. 

Degenerative or traumatic arthritis, established by x-ray findings, is rated on the basis of limitation of motion under the appropriate diagnostic code for the specific joint or joints involved. 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5010. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 

For degenerative arthritis of the lumbar spine, a 20 percent disability rating is warranted where flexion of the thoracolumbar spine is greater than 30 degrees, but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or if there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 38 C.F.R. § 4.71a, General Rating Formula. A 40 percent disability rating is warranted where forward flexion of the thoracolumbar spine is to 30 degrees or less; or if there is favorable ankylosis of the entire thoracolumbar spine. Id. A 50 percent evaluation is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine. Id. A 100 percent evaluation is warranted if there is unfavorable ankylosis of the entire spine. Id.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion are 0 to 30 degrees, and left and right lateral rotation are 0 to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. 38 C.F.R. § 4.71a, General Rating Formula, Note (2); see also 38 C.F.R. § 4.71a, Plate V (2014). 

As noted above, the Veteran's service-connected degenerative disc disease of the lumbar spine has been assigned a 20 percent disability rating. In order for a higher rating to be warranted, the evidence of record must demonstrate, at a minimum, forward flexion of the thoracolumbar spine limited to 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. The evidence of record does not show favorable ankylosis of the entire thoracolumbar spine. With regard to limitation of motion, throughout the pendency of this appeal, forward flexion of the thoracolumbar spine was limited to 15 degrees, with increased radicular pain, in June 2009; 20 degrees in June 2010; 70 degrees in May 2011; 45 degrees in June 2012; and 45 degrees in July 2014. Based on this evidence, the Board finds that the limitation of forward flexion exhibited by the Veteran's degenerative disc disease of the lumbar spine warrants a 40 percent disability rating prior to May 13, 2011. See 38 C.F.R. §§ 4.7, 4.71a, Diagnostic Code 5237; see also Hart, 21 Vet. App. at 509-10. Beginning May 13, 2011, the evidence of record demonstrates that the limitation of forward flexion caused by the Veteran's degenerative disc disease of the lumbar spine warrants a rating of no more than 20 percent. See Id. Additionally, as the evidence of record does not show ankylosis at any point during the relevant time period, a disability rating of 50 percent or 100 percent is not warranted for any distinct period. See Hart, 21 Vet. App. at 509-10. 

In making this determination, the Board has also considered whether there is any additional functional loss not contemplated by the currently assigned ratings. See 38 C.F.R. §§ 4.40, 4.45, 4.59 (2014); see also Deluca v. Brown, 8 Vet. App. 202-206 (1995). Beyond the measured limitation of motion, the Veteran described everyday activities that were either limited or prevented by his service-connected degenerative disc disease of the lumbar spine, including prolonged standing, walking, and sitting. The Veteran reported that engaging in these activities resulted in increased pain, which required him to rest or change positions approximately every ten to 15 minutes. The evidence also shows that the Veteran occasionally walked with a cane, and his back pain affected his ability to exercise and perform household chores effectively. However, throughout the pendency of this appeal, the record demonstrates that the Veteran did not experience additional functional limitation during flare-ups or with repetitive use beyond the limitation of motion noted on range of motion testing. Furthermore, despite having to change positions or rest every ten to 15 minutes, the Veteran was able to engage in some home exercises, ride a bicycle, drive, walk to a nearby store, and perform activities of daily living, such as dressing himself, washing dishes, and doing laundry. Based on the foregoing, the Board finds that the Veteran did experience pain; however it did not cause additional functional impairment beyond the demonstrated limitation of motion. See Mitchell v. Shinseki, 25 Vet. App. 32, 33 (2011) (holding that pain alone does not constitute a functional loss under VA regulations that evaluate disability based on limitation of range of motion). Thus, the Board finds that the degenerative disc disease of the lumbar spine does not meet or more nearly approximate the criteria for a rating in excess of 40 percent for limitation of motion prior to May 13, 2011, and does not meet or more nearly approximate the criteria for a rating in excess of 20 percent for limitation of motion beginning May 13, 2011. See 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010, 5257, 5260, 5261 (2014); DeLuca v, 8 Vet. App. at 206; Mitchell, 25 Vet. App. at 37-38. Accordingly, a rating in excess of 40 percent is not warranted prior to May 13, 2011, and a rating in excess of 20 percent is not warranted starting May 13, 2011, based on additional functional loss or impairment. Id. 

The Board has also considered whether a higher rating is warranted based on incapacitating episodes; however, the evidence of record shows that the Veteran consistently denied experiencing incapacitating episodes. See 38 C.F.R. § 4.71a, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. Consequently, a higher rating is not warranted based on incapacitating episodes. 

Finally, the Board considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against assigning the Veteran's degenerative disc disease of the lumbar spine a rating in excess of 40 percent prior to May 13, 2011, and a rating in excess of 20 percent beginning May 13, 2011, the doctrine is not for application. See Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). 

II. Surgical Scar

In the August 2010 rating decision, the RO indicated that the Veteran's service-connected degenerative disc disease of the lumbar spine included service connection for a surgical scar resulting from the September 2009 back surgery. Thus, the Board will consider whether a separate disability rating is warranted for the Veteran's scar.

The Veteran's service-connected surgical scar has been assigned a non-compensable rating pursuant to the criteria set forth in 38 C.F.R. § 4.118, Diagnostic Code 7804. A 10 percent disability rating is warranted for one or two scars that are unstable or painful; a 20 percent disability rating is warranted for three or four scars that are unstable or painful; and a maximum 30 percent disability rating is warranted for five or more scars that are unstable or painful. 38 C.F.R. § 4.118, Diagnostic Code 7804. An unstable scar is one where, for any reason, there is frequent loss of covering of the skin over the scar. 38 C.F.R. § 4.118, Diagnostic Code 7804, Note (1). 

A review of the medical evidence of record reveals that the Veteran had one, linear, well-healed surgical scar measuring approximately 19.5 centimeters. The record shows that throughout the appeal period, the scar was neither painful nor unstable and caused no functional limitations. Thus, the Board finds that a compensable rating is not warranted for any distinct period during the pendency of this appeal. See 38 C.F.R. § 4.118, Diagnostic Code 7804; Fenderson, 12 Vet. App. at 126.

The Board has also considered whether the Veteran's service-connected surgical scar warrants a higher disability rating under an alternative diagnostic code. However, the medical evidence of record does not show scars of the head, face or neck; scars that are deep or nonlinear; or scars that produce any disabling effects. See 38 C.F.R. § 4.118, Diagnostic Codes 7800, 7801, 7802, 7805 (2014). Thus, a higher rating is not warranted under an alternative diagnostic code.

The Board notes that during the August 2014 hearing before the Board, the Veteran testified that he was told that scar tissue put pressure on the nerves in his spine, which caused or exacerbated his radiculopathy. A June 2011 VA treatment provider noted that some of the Veteran's soreness and fatigue in the quadriceps and calf muscles may be due to scar tissue from the back surgery.

The evaluation of the same disability or the same manifestation under various diagnoses is to be avoided. See 38 C.F.R. § 4.14. For purposes of determining whether a veteran is entitled to separate ratings for different problems or residuals of an injury, such that separate evaluations do not violate the prohibition against pyramiding, the critical element is that none of the symptomatology for any one of the conditions is duplicative of, or overlapping with, the symptomatology of the other conditions. Esteban v. Brown, 6 Vet. App. 259, 260-61 (1994). Because the Veteran's lower extremity radiculopathy has been assigned a separate disability rating, evaluating the Veteran's surgical scar based on radicular symptoms would constitute pyramiding. See 38 C.F.R. § 4.14; Esteban, 6 Vet. App. at 260-61. 

In reaching this decision, the Board considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against assigning a separate compensable rating to the Veteran's surgical scar, the doctrine is not for application. See Gilbert, 1 Vet. App. at 56.



III. Right Lower Extremity Radiculopathy

In an August 2010 rating decision, service connection was granted for right lower extremity radiculopathy, to which a 10 percent disability rating was assigned, effective April 12, 2010. See 38 C.F.R. § 4.124a, Diagnostic Code 8520. Thereafter, the Veteran appealed, seeking a higher initial rating for his service-connected right lower extremity radiculopathy.

The Veteran's service-connected right lower extremity radiculopathy has been assigned a 10 percent disability rating pursuant to the criteria set forth in Diagnostic Code 8520, relating to sciatic nerve paralysis. See 38 C.F.R. § 4.124a, Diagnostic Code 8520. Under Diagnostic Code 8520, a 10 percent rating is assigned for mild incomplete paralysis of the sciatic nerve; a 20 percent rating is assigned for moderate incomplete paralysis of the sciatic nerve; a 40 percent rating is assigned for moderately severe incomplete paralysis; a 60 percent rating is assigned for severe incomplete paralysis, with marked muscular atrophy; and an 80 percent rating is assigned for complete paralysis of the sciatic nerve, where the foot dangles and drops, and there is no active movement possible of muscles below the knee, flexion of knee weakened, or very rarely, lost. Id. 

Words such as "mild," "moderate," and "severe" are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. 4.6 (2014). Furthermore, the term "incomplete paralysis," with this and other peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 38 C.F.R. § 4.124a , Note at Diseases of the Peripheral Nerves. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. Id. The ratings for the peripheral nerves are for unilateral involvement; when bilateral, the ratings combine with application of the bilateral factor. Id.

Physical examinations revealed objective evidence of nerve involvement on the right side. Specifically, a July 2009 VA treatment record noted impingement on the right L4 nerve root. In June 2011, it was noted that the Veteran had a pinched nerve at L5, which affected the right leg. A January 2012 VA treatment provider attributed the Veteran's radiculopathy to L3 nerve root impingement. A June 2012 MRI showed severe right foraminal narrowing at L4-L5 with flattening of the right L4 nerve root in the right neural foramen, which the June 2012 examiner indicated was consistent the Veteran's radicular symptoms. 

Throughout the pendency of this appeal, Babinski tests were negative, and with the exception of a June 2009 physical examination, straight leg raising tests were also negative. Sensory examinations revealed normal sensation in the right lower extremity, except in July 2009 and June 2010, when sensation was decreased over the top of the right lateral lower leg and foot. Right lower extremity muscle strength was normal, with the exception of a January 2012 physical examination report showing right extensor hallucis strength as a 4 out of 5. A June 2012 VA examination report noted right thigh and calf muscle atrophy. Right patellar and Achilles reflexes were consistently absent or hypoactive, with the exception of a June 2012 VA examination report, which noted normal reflexes, bilaterally. There was no evidence of bladder or bowel problems.

Throughout the pendency of this appeal, the Veteran consistently reported pain in the right lower extremity radiating through the hip, buttock, thigh, and knee with occasional stiffness, weakness, numbness, and dysesthesia. After the September 2009 back surgery, which was intended to treat a herniated disc with L4 nerve root impingement, the Veteran reported an increase in radicular symptoms in the right lower extremity. In 2012, the Veteran began receiving epidural steroid injections, which reportedly provided some relief. However, the record shows that even after surgery and epidural steroid injections, the Veteran continued to complain of worsening right lower extremity pain. The Veteran reported that he had to rest or change positions after standing, walking, or sitting for approximately ten to 15 minutes in order to relieve his radicular symptoms. He indicated that his pain interfered with his ability to exercise, perform daily chores effectively, and drive walk, stand, or sit for more than ten to 15 minutes at a time.

Based on the foregoing, the Board finds that the evidence of record reflects a disability picture that more nearly approximates moderate incomplete paralysis of the sciatic nerve in the right lower extremity. See 38 C.F.R. § 4.7 (2014). As such, the Board finds that a disability rating of 20 percent is warranted for the Veteran's service-connected right lower extremity radiculopathy. 

The Board notes that although the Veteran testified that his foot occasionally dragged when he wore dress shoes, there is no medical evidence of record to support a finding that the Veteran experienced foot drop. Thus, a higher disability rating is not warranted due to evidence of foot drop. See 38 C.F.R. § 4.124a, Diagnostic Codes 8520, 8521.

The Board has also considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against assigning a rating in excess of 20 percent for the Veteran's right lower extremity radiculopathy, the doctrine is not for application. See Gilbert, 1 Vet. App. at 56. 

IV. Extraschedular Consideration

Generally, evaluating a disability using the corresponding or analogous diagnostic codes contained in the Rating Schedule is sufficient. See 38 C.F.R. §§ 4.20, 4.27 (2014). Because the ratings are averages, an assigned rating may not completely account for each individual veteran's circumstance, but nevertheless would still be adequate to address the average impairment in earning capacity caused by disability. In exceptional cases where the rating is inadequate, it may be appropriate to assign an extraschedular rating. 38 C.F.R. § 3.321(b) (2014).

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluation for that service-connected disability is inadequate, a task performed either by the RO or the Board. Id.; see Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd, 572 F.3d 1366 (2009); see also Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating [S]chedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical"). Therefore, initially, there must be a comparison between the level of severity and symptomatology of a veteran's service-connected disability with the established criteria found in the Rating Schedule for that disability. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the veteran's disability level and symptomatology, then the disability picture is contemplated by the Rating Schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.

The Board finds the Veteran's disability picture is not so unusual or exceptional in nature as to render the already assigned schedular ratings inadequate, as the criteria under which the Veteran's service-connected disabilities are evaluated specifically contemplate the level of occupational and social impairment caused by his degenerative disc disease of the lumbar spine with surgical scar and right lower extremity radiculopathy. See 38 C.F.R. §§ 4.71a, Diagnostic Codes 5237, 4.118, Diagnostic Code 7804, 1.124a, Diagnostic Code 8520.

Throughout the pendency of this appeal, the Veteran's service-connected degenerative disc disease of the lumbar spine with surgical scar and right lower extremity radiculopathy were manifested by symptoms of pain, limitation in range of motion, and occasional stiffness, weakness, numbness, and dysesthesia, which limited his ability to stand, walk, and sit for prolonged periods of time. When comparing this disability picture with the symptoms contemplated by the rating criteria, the Board finds that the Veteran's experiences are congruent with the disability picture represented by the above-referenced ratings assigned for these disabilities. 

Additionally, the Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014). However, in this case, there are no additional symptoms that have not been attributed to a specific service-connected disability. See Mittleider v. West, 11 Vet. App. 181 (1998). Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

The Board is cognizant of the ruling of the United States Court of Appeals for Veterans Claims (Court) in Rice v. Shinseki, 22 Vet. App. 447 (2009). In Rice, the Court held that a claim for a total rating based on individual unemployability (TDIU) due to service-connected disability, either expressly raised by the Veteran or reasonably raised by the record, involves an attempt to obtain an appropriate rating for a disability and is part of the claim for an increased rating. In this case, the Veteran testified at the August 2014 Board hearing that the service-connected degenerative disc disease of the lumbar spine and right leg radiculopathy limit his ability to stand and walk for long periods, and prevent him from mowing the lawn, shoveling the sidewalk in the winter, and doing housework. The Veteran has reported he lost a job in 2001 due to nonservice-connected psychiatric disabilities. See VA Form 21-4138, Statement in Support of Claim, received in August 2012. The record also shows that the Social Security Administration (SSA) found the Veteran disabled as of June 1, 2002, primarily due to a nonservice-connected cervical spine disability. See SSA Administrative Law Judge Decision dated December 2004. In March 2011, the Veteran filed a claim for a TDIU, and entitlement to a TDIU was denied in a January 2012 rating decision. No appeal was taken from that determination. Further, the Veteran has not argued, and the record does not otherwise reflect, that his service-connected right leg radiculopathy and degenerative disc disease of the lumbar spine with surgical scar render him unable to secure or follow a substantially gainful occupation. The Board concludes that a claim for a TDIU is not before the Board.



ORDER

Prior to May 13, 2011, a rating of 40 percent, but no more, for degenerative disc disease of the lumbar spine is granted, subject to the law and regulations governing the payment of monetary benefits.

Beginning on May 13, 2011, a rating in excess of 20 percent for degenerative disc disease of the lumbar spine is denied.

A separate compensable rating for a surgical scar is denied.

An initial rating of 20 percent, but no more, for right lower extremity radiculopathy is granted, subject to the law and regulations governing the payment of monetary benefits.
 


____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs